**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leonard P. Garcia, | CIV 04-1299-PHX-RGS |
| Plaintiff, | **ORDER** |
| vs. | |
| Ed Moses Dodge, et al., | |
| Defendants. | |

Pending before the Court is Defendant Wells Fargo Financial Acceptance Arizona, Inc.'s ("Wells Fargo Financial") Motion for Summary Judgment (Doc. #12). After considering the arguments raised by the parties in their briefing and in oral argument, the Court now issues the following ruling.

**BACKGROUND**

Plaintiff Leonard P. Garcia has asserted several claims against automobile dealership, Ed Moses Dodge, Inc., ("Ed Moses") and various consumer finance companies, including Wells Fargo Financial, in connection with Plaintiff's attempted purchase of a vehicle from Ed Moses.

On September 15, 2002, Plaintiff attempted to purchase a vehicle from Ed Moses. On September 19, 2002, Wells Fargo Financial received an application for an extension of credit to Plaintiff from Ed Moses. In order to evaluate Plaintiff's credit application, Wells Fargo Financial obtained a copy of Plaintiff's credit report. Plaintiff's credit application was subsequently denied.

1   On October 3, 2002, Wells Fargo Financial received a second application for an extension of credit to Plaintiff from Ed Moses. Along with Plaintiff's name, the second credit application contained the name of co-applicant Lorraine Garcia. In order to evaluate the credit application, Wells Fargo Financial obtained copies of both applicants' credit reports. Wells Fargo approved the credit application and notified Ed Moses of the approval.

On June 23, 2004, Plaintiff filed a Complaint alleging that Defendant Wells Fargo Financial violated the Equal Credit Opportunity Act ("ECOA"), Federal Reserve Board Regulation B ("Regulation B"), and the Fair Credit Reporting Act ("FCRA") in connection with Wells Fargo Financial's consideration of the two credit applications submitted by Ed Moses on behalf of Plaintiff. Specifically, Plaintiff contends that notice of an adverse action taken with respect to his September 19, 2002 credit application was never sent or received as required by statute. Plaintiff further asserts that with respect to his October 3, 2002 credit application, Wells Fargo Financial's notification to Ed Moses rather than Plaintiff was improper and its approval constituted a counteroffer as it contained different terms than originally agreed upon by Plaintiff and Ed Moses.

Prior to the exchange of initial disclosures or any discovery, Wells Fargo Financial filed a Motion for Summary Judgment arguing that it had fully complied with the requirements set forth in the ECOA, Regulation B, and the FCRA. Plaintiff then filed a Motion to Stay contending that he needed to obtain depositions of Defendants, their agents, employees, and representatives in relation to the policies, practices, and procedures in processing adverse notices. Plaintiff argued that he needed information obtained in discovery to support his unequivocal denial of receipt of any adverse notice. Additionally, Plaintiff stated that there existed a substantial factual dispute regarding the terms contained in the loan application submitted to Well Fargo Financial and that he needed to engage in discovery to obtain the necessary information from Defendants regarding these terms to support his position.

The Court subsequently granted Plaintiff's Motion to Stay. Thereafter, the parties filed supplemental pleadings and the Court set the matter for oral argument.

**DISCUSSION**

The ECOA prohibits creditors from discriminating against an applicant on the basis of race, color, religion, national origin, sex, marital status or age. See 15 U.S.C. § 1691(a)(1). In addition to anti-discrimination provisions, the ECOA requires creditors to notify an applicant for credit of action on the application within thirty days. See 15 U.S.C. § 1691(d)(1). The statute provides that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2). In the instance where a creditor has been requested by a third party to make a specific extension of credit directly or indirectly to an applicant, the notification and statement of reasons required may be made directly by such creditor, or indirectly through the third party. See 15 U.S.C. § 1691(d)(4). The term "adverse action" is defined as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6).

The accompanying Regulation B, issued by the Board of Governors of the Federal Reserve System pursuant to ECOA, is found at 12 C.F.R., Part 202. Regulation B provides that "[a] creditor shall notify an applicant of action taken within: (i) 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application." 12 C.F.R. § 202.9(a)(1)(i). Regulation B defines "adverse action" as "(i) [a] refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered." 12 C.F.R. § 202.2(c)(1)(i).

The pertinent provisions of the FCRA provide that if a person "takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall – (1) provide oral, written, or electronic notice of the adverse action to the consumer ... ." 15 U.S.C. § 1681m(a)(1). The term

"adverse action" has the same meaning for purposes of the FCRA as it has for the ECOA. See 15 U.S.C. § 1681a(k)(1)(A).

Wells Fargo Financial moves for summary judgment arguing that it fully complied with the requirements set forth in the ECOA, Regulation B, and the FCRA. Specifically, with respect to Plaintiff's September 19, 2002 credit application, Wells Fargo Financial asserts that it provided Plaintiff with its notice of denial as required by statute. In support of this assertion, Well Fargo Financial submits a copy of the notice sent to Plaintiff and the Declaration of Randy J. Sipple, which is offered to authenticate Wells Fargo Financial's documents and to explain the institutional practices and procedures whereby Wells Fargo Financial provided timely notice of denial to Plaintiff.[1]

In response, Plaintiff argues that a factual dispute exists as to whether notice was actually sent and received thereby precluding summary judgment. Plaintiff submits his own affidavit in support of his unequivocal denial of receipt of any adverse notice. Additionally, Plaintiff refutes Wells Fargo Financial's submission of Randy J. Sipple's Declaration in support of its assertion that a presumption that a properly mailed document is received by addressee may arise based on circumstantial evidence, including testimony by someone familiar with company procedures and practices that said document was sent. Plaintiff claims that Mr. Sipple lacks sufficient personal knowledge to attest to the facts set forth in his declaration.

The Court's review of the record, as it applies to Plaintiff's September 19, 2002 credit application, reveals that Wells Fargo Financial presented a letter dated September 29, 2002, notifying Plaintiff that his request for credit had been denied. (See October 5, 2004 Decl. of

---

[1] Plaintiff filed a motion and supplement to strike the Declaration of Randy J. Sipple arguing that Mr. Sipple lacks sufficient personal knowledge to attest to the facts set forth in his declaration. However, the Court finds that throughout Mr. Sipple's declaration, he sets forth the basis on which he acquired institutional knowledge sufficient to authenticate documents presented and attest to Wells Fargo Financial's customary practices in mailing out notices of its credit decisions. Accordingly, Plaintiff's motion and supplement to strike the Declaration of Randy J. Sipple will be denied.

- 4 -

1  Randy J. Sipple Ex. 2.)  In support of its assertion that said letter was properly mailed and
2  received by Plaintiff, Wells Fargo Financial submits the Declaration of Randy J. Sipple,
3  attesting to the policies and procedures followed by Wells Fargo Financial in considering
4  credit applications submitted by and on behalf of consumers in the regular course of business.
5  Specifically, the Declaration states in pertinent part:

> 3. Adverse action letters are generated internally by Wells Fargo Financial.
>
> 4. Wells Fargo Financial employs a system that captures applications and decision data during the internal credit decision process. This information is reviewed and processed daily. Seven days after an adverse decision has been made, the system automatically generates an adverse action letter. The process merges retained applicant and decision data with a letter from a template much like a Microsoft Word mail merge process. All of these actions are taken internally and are not outsourced to any third party vendors.
>
> 5. Once an adverse action letter has been generated, a courier picks up the letters daily and takes them to an outsourced mail house for stuffing and mailing.
>
> 6. This same process was followed in dealing with the credit application submitted in September 2002 by [Ed Moses] on behalf of [Plaintiff].

(December 6, 2004 Decl. of Randy J. Sipple ¶¶ 3-6.)  In light of the declaration provided, the Court finds that Wells Fargo Financial is entitled to a presumption of delivery. See, e.g., Davis v. U.S. Bancorp, 383 F.3d 761, 766 (8th Cir. 2004) (holding that presumption that a properly mailed document is received by addressee may arise based on circumstantial evidence, including testimony by someone familiar with company procedures and practices).

However, in response, Plaintiff has submitted an affidavit stating that he "never received any notice or other communication from Wells Fargo [Financial]" regarding his September 19, 2002 credit application.  (Aff. of Leonard P. Garcia ¶ 10.)  When a plaintiff unequivocally denies receipt of the letter, there exists a genuine issue of material fact. See, e.g., In re Longardner & Assocs., Inc., 855 F.2d 455, 459 (7th Cir. 1988) (finding that denial of receipt alone does not rebut the presumption, but merely creates a question of fact).  Thus, the Court, having determined that there exists a factual dispute with respect to Plaintiff's September 19, 2002 credit application, will deny said party's Motion for Summary Judgment with respect to Plaintiff's September 19, 2002 credit application.

1    Regarding Plaintiff's October 3, 2002 credit application, Wells Fargo Financial claims
2 that it notified Ed Moses, the third party who requested an extension of credit to Plaintiff, of
3 its approval as permitted by statute. Furthermore, in its Reply in Support of Motion for
4 Summary Judgment ("Reply") – an unsworn document – Wells Fargo Financial contends that
5 the October 3, 2002 credit application did not contain any terms, but simply provided
6 relevant information regarding employment and credit references for Plaintiff and co-
7 applicant Lorraine Garcia. (See Reply at 7.) In support of this contention, Wells Fargo
8 Financial submits "a copy of the actual Credit Application" – which fails to contain any terms
9 – attached as Exhibit B to its Reply. (See Reply Ex. B.)

10    However, the Court finds that Wells Fargo Financial has asserted a conflicting
11 position with regard to the terms contained in the October 3, 2002 credit application. The
12 October 5, 2004 Declaration of Randy J. Sipple states:

> 6. On or about October 3, 2002, Wells Fargo Financial received a second application from Ed Moses for an extension of credit to plaintiff ... . A true and correct copy of the Second Credit Application is attached hereto as Exhibit "3".
>
> \* \* \*
>
> 8. On October 3, 2002, Wells Fargo Financial sent a notice to Ed Moses advising that the Second Credit Application was approved. ... A true and correct copy of the re-created notice is attached hereto as Exhibit "4".

(October 5, 2004 Decl. of Randy J. Sipple ¶¶ 6, 8.) The "Second Credit Application" (Exhibit 3) and "notice" (Exhibit 4) referred to in said Declaration both contain terms of credit, which Plaintiff argues are different than the terms originally agreed upon. (See October 5, 2004 Decl. of Randy J. Sipple Ex. 3, 4.) This is clearly a change from the position originally noted in Wells Fargo Financial's Reply.

Accordingly, at best, the Court finds it unclear as to whether Wells Fargo Financial issued a counteroffer. In light of Wells Fargo Financial's conflicting positions as to whether a counteroffer was made – requiring notice to Plaintiff – the Court will deny said party's Motion for Summary Judgment with respect to Plaintiff's October 3, 2002 credit application.

Therefore,

- 6 -

1 **IT IS ORDERED** that Wells Fargo Financial's Motion for Summary Judgment (Doc.
2 #12) is **DENIED**;

3 **IT IS FURTHER ORDERED** that Plaintiff's motion and supplement to strike the
4 Declaration of Randy J. Sipple (Docs. #19, #54) are **DENIED**;

5 **IT IS FURTHER ORDERED** that having come before the Court pursuant to
6 Defendant Ed Moses' Motion for Leave to Amend its Answer, and the Court finding no
7 undue delay or prejudice, and good cause appearing therein, Defendant's Motion for Leave
8 to Amend its Answer (Doc. #60) is **GRANTED**;

9 **IT IS FURTHER ORDERED** setting a Pretrial Conference on Tuesday, October 3,
10 2006 at 11:00 a.m.;

11 **IT IS FURTHER ORDERED** setting this matter for trial on Tuesday, November 14,
12 2006 at 9:30 a.m.

13 DATED this 14th day of September, 2006.

_____
Roger G. Strand
Senior United States District Judge